NO. 07-02-0406-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



AUGUST 18, 2003



______________________________




TIMOTHY LEE PHILLIPS, JR., APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 181ST DISTRICT COURT OF POTTER COUNTY;



NO. 39,434-B; HONORABLE JOHN BOARD, JUDGE



_______________________________



Before QUINN and REAVIS, JJ. and BOYD, S.J. (1)

ABATEMENT AND REMAND


 Pursuant to a plea of guilty, appellant Timothy Lee Phillips, Jr. was granted deferred
adjudication in 1999 for burglary of a building, a state jail felony, and placed on community
supervision for six years. Upon the State's motion to proceed for numerous violations of
the conditions of community supervision, the trial court adjudicated appellant guilty of the
original offense and assessed punishment at two years confinement in a state jail facility. 
In presenting this appeal counsel has filed an Anders (2) brief in support of a motion to
withdraw. Based upon the rationale expressed herein, the motion to withdraw is granted
and the appeal is abated and the cause remanded to the trial court for further proceedings.

 In support of her motion to withdraw, counsel has certified that she has diligently
reviewed the record and, in her opinion, the record reflects no reversible error or grounds
upon which an appeal can be predicated. Anders v. California, 386 U.S. 738, 744-45, 87
S.Ct. 1396, 18 L.Ed.2d 493 (1967). Thus, she concludes the appeal is frivolous and
without merit. In compliance with High v. State, 573 S.W.2d 807, 813 (Tex.Cr.App. 1978),
counsel has discussed why, under the controlling authorities, there is no error in the
court's judgment. Counsel has also shown that she sent a copy of the brief to appellant,
and informed appellant that, in counsel's view, the appeal is without merit. In addition,
counsel has demonstrated that she notified appellant of his right to review the record and
file a pro se brief if he desired to do so. Appellant did not file a pro se brief and the State
did not favor us with a brief. 

 On February 8, 1999, at his guilty plea hearing, the trial court properly admonished
appellant on the range of punishment for community supervision for the state jail felony of
burglary of a building to be not less than two years nor more than five. See Tex. Code
Crim. Proc. Ann. art. 42.12, § 15(b) (Vernon Supp. 2003); see also Tex. Pen. Code Ann.
§ 30.02(c)(1) (Vernon 2003). However, the order deferring adjudication recites "defendant
should be placed on community supervision, and that further proceedings herein shall be
suspended for a period of six (6) years . . . . (Emphasis added). 

 On August 9, 2002, the trial court held a hearing on the State's motion to proceed.
After accepting appellant's plea of true to some of the State's alleged violations of the
conditions of community supervision and hearing evidence of other violations, the trial
court adjudicated him guilty of burglary of a building and sentenced him to two years
confinement in a state jail facility.

 Counsel advances two arguable grounds in the Anders brief, to-wit: (1) whether the
trial court abused its discretion in accepting appellant's pleas of guilty and true as they
were involuntarily given and (2) whether appellant was harmed when the trial court
imposed a probationary period for a state jail felony that exceeded the range authorized
by article 42.12, section 15(b) of the Texas Code of Criminal Procedure (Vernon Supp.
2003). (3) Counsel then argues that the record reflects appellant's pleas were freely and
voluntarily given. (4) Counsel also argues that imposition of a probationary period in excess
of that authorized by statute did not harm appellant as he only served approximately three
and a half years of his term of community supervision before being adjudicated guilty and
properly sentenced to two years confinement. However, in an abundance of caution, we
conclude that further evaluation of the unauthorized period of community supervision is
necessary before concluding the appeal is frivolous.

 Having found an arguable ground for appeal, this Court must ensure appellant's
right to counsel by permitting appellant's present counsel to withdraw and requiring the
appointment of new counsel to rebrief whether imposition of a probationary period that
exceeds the range authorized by article 42.12, section 15(b) of the Code constitutes error,
and if so, whether appellant was harmed by the error. Counsel is also directed to raise
any other grounds he believes might support the appeal. Stafford v. State, 813 S.W.2d
503, 510 (Tex.Cr.App. 1991).

 To secure the appointment of new counsel, we now abate the appeal and remand
the cause to the trial court. Duncan v. Evans, 653 S.W.2d 38, 40 (Tex.Cr.App. 1983). 
Upon remand, the trial court shall appoint new counsel to brief the ground we deem
arguable, as well as any other grounds that might support the appeal. The trial court shall
direct counsel to file appellant's brief within 30 days after his appointment and shall furnish
the name, address, telephone number, and state bar number of new counsel to the Clerk
of this Court immediately after the appointment is ordered. 

 Accordingly, counsel's motion to withdraw is hereby granted and the appeal is
abated and the cause remanded to the trial court for further proceedings.

 Per Curiam 

Do not publish.
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.
2. Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).
3. We note that article 42.12, section 5(b) precludes a challenge to the trial court's
determination of guilt; however, an appeal from the assessment of punishment is
permitted.
4. Voluntariness of a plea is no longer appealable from plea-bargained felony
convictions. Cooper v. State, 45 S.W.3d 77, 83 (Tex.Cr.App. 2001).



Used="false" Name="Light List Accent 1"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 









NO. 07-10-0095-CR

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL A

 

 FEBRUARY 23, 2011



 

 



 

WILLIAM CHARLES PHILLIPS, APPELLANT

 

v.

 

THE STATE OF TEXAS, APPELLEE 



 

 



 

 FROM THE 106TH DISTRICT
COURT OF LYNN COUNTY;

 

NO. 04-2700; HONORABLE CARTER T. SCHILDKNECHT, JUDGE



 

 



 

Before CAMPBELL and HANCOCK and PIRTLE,
JJ.

 

MEMORANDUM OPINION

            Appellant, William Charles Phillips,
was convicted by a jury of the offense of possession of a controlled substance
(methamphetamine) in an amount of four grams or more but less than 200 grams
with intent to deliver[1] and sentenced to
thirty-five years confinement.  In three
issues, he asserts the trial court erred by admitting evidence of two
extraneous offenses:  (1) possession of
drug paraphernalia (a syringe containing a clear liquid discovered in his sock
prior to incarceration) and (2) the subsequent possession of a controlled
substance.  By his third issue, Appellant
asserts the evidence is legally and factually insufficient to sustain his
conviction.  We affirm. 

Background

            On January
23, 2004, DPS Trooper Jeff Ashburn stopped a vehicle being driven by Jimmy
Thomas.  Appellant was a passenger at the
time.  While the stop occurred in Lubbock
County, the vehicle had just come from Lynn County.  After making contact with Thomas, Ashburn
detected an odor of marijuana.  Thomas
was then detained and a small amount of methamphetamine was found in his jeans.  Thomas eventually admitted that he was
smoking marijuana and that there would be evidence of that fact in the
vehicle's ashtray.  When he searched the
vehicle, Ashburn found a marijuana cigarette in the car's ashtray, a syringe in
the center console, and, by the right front passenger seat, a black leather
pouch containing numerous small bags of methamphetamine and a set of digital
scales.  Underneath the passenger seat,
he also found a large plastic bag containing methamphetamine.  Thomas and Appellant were arrested and
transported to the Lubbock County Jail.  At
the jail, Ashburn was given a syringe found in Appellant's sock[2] which he identified as the
same type of syringe found in the console of Thomas's vehicle.   

            Following their arrest, Thomas gave Sergeant
Mike Ybarra, a DPS Narcotics Officer, a key to a van parked at the residence of
Appellant's father in Wilson, Lynn County, Texas.  Ybarra subsequently went to the residence where
he met Vicki Graves, Appellant's girlfriend. 
Appellant's father arrived shortly thereafter and consented to a search
of his residence and the van.  During the
search, Ybarra found methamphetamine in a small, clear plastic bag in a desk
drawer in the living room of the residence and two glass containers containing
a clear liquid in a small refrigerator in the van.  He identified the clear liquid as containing methamphetamine.[3]  

            On May 17, 2004, a Lynn County Grand
Jury returned an indictment against Appellant alleging that he intentionally
and knowingly possessed, with intent to deliver, a controlled substance (methamphetamine)
having an aggregate weight of four grams or more but less than 200 grams.  The indictment also alleged the lesser
included offense of possession of a controlled substance.[4]  

            At trial, Thomas testified pursuant
to an immunity agreement.[5]  He testified that, on January 22, 2004, he
received a call from Appellant asking him to work on a vehicle at his father's
residence in Wilson.  Thomas picked up
Appellant and they drove to the residence, where Appellant gave him a key to
the van to check the ignition switch.  In
the van, Thomas observed materials used in the manufacture of
methamphetamine.  He also observed
Appellant in the van preparing to make methamphetamine.  The next day, on January 23, 2004, Thomas
returned to the residence and parked near the van.  He heard someone moving around in the
van.  When Appellant emerged from the
van, Thomas saw smoke coming out of the van and concluded Appellant was
"gassing" the methamphetamine.[6]  Thomas then agreed to take Appellant to Lubbock.  While on the way to Lubbock, Thomas and
Appellant smoked marijuana.  Shortly
after crossing into Lubbock County from Lynn County, they were stopped by Trooper
Ashburn.  Thomas admitted to Ashburn that
they had been smoking marijuana and told the trooper that, with the exception
of a burnt marijuana cigarette in the car's ashtray, there was no other contraband
in the vehicle.  He then gave Ashburn permission
to search his vehicle.  While Ashburn was
conducting the search, Appellant told Thomas: 
"Look, if you'll just take the rap for this, I'll bail you
out."  Thomas testified that none of
the methamphetamine found in his vehicle, the van, or the residence owned by
Appellant's father belonged to him.  

            Deputy Danny Randall of the Lynn
County Sheriff's Office testified that he went to Appellant's father's residence
on July 12, 2004, to serve a felony warrant on Appellant.  When he entered the residence, Appellant was
sitting on a bed in the living room beside a coffee table.  Deputy Pete Vallejo testified that there was
a white powdery substance on the coffee table that later tested positive for
methamphetamine.  Vallejo also testified
that, inside the house, he found two plastic bags containing a leafy substance,
a glass pipe, six syringes, and two propane torches typically used by drug
users to light methamphetamine and smoke it from a glass pipe.  

            After the prosecution rested, the
trial judge instructed the jury that there had been some testimony regarding the
offense of possession of a controlled substance in a correctional
facility.  The trial judge instructed the
jury that they were to disregard that evidence. 
There were no objections.  

            For the defense, Appellant's father
testified he owned the van parked in his yard. 
He testified that Thomas had been staying in the van.  He also testified that Appellant and his
girlfriend had stayed in the van and had also stayed in his living room.   

            Appellant testified on direct
examination that, on January 22, 2004, he went to his father's house to help him
install a fuel pump on an Oldsmobile.  He
also testified that Thomas had been staying at his father's house in the van.[7]  Appellant stayed overnight in the living room
and the next morning Thomas offered him a ride to Lubbock.  He testified that he knew nothing about the
methamphetamine under the passenger seat or the black leather pouch discovered
by Ashburn.   He also denied telling Thomas he would make
his bail if he would take the rap and he denied knowing anything about the methamphetamine
in the van or in the desk drawer in the living room of his father's house.   

            With regard to the incident on July
12, 2004, Appellant testified that when officers showed up at his father's
house with a warrant for his arrest he knew there were drugs on the table and
he was using them, but he denied that they were his drugs.  Rather, the drugs belonged to a friend who
was also at the house when the warrant was served.  On cross-examination, Appellant agreed with
the State that he used methamphetamine and had possessed the drug in the past
at his father's house. 

            Prior to closing arguments, the
trial judge read the jury charge which included a limiting instruction on
extraneous offenses.[8] During closing arguments,
Appellant's counsel drew the jury's attention to the limiting instruction and
argued that the methamphetamine found in the house and van belonged to his
client's father, and the methamphetamine found in Thomas's vehicle belonged to
other persons who had access to the vehicle. 
Further, he argued that, regarding the incident which had occurred on
July 12, 2004, Appellant had admitted he knew the drugs were there and he was
using them, but the drugs did not belong to him.  

            Thereafter, the jury found Appellant
guilty of the offense of possession with intent to deliver a controlled
substance (methamphetamine) having a weight of four grams or more but less than
200 grams and sentenced him to thirty-five years confinement.  No direct appeal was timely filed; however,
the Court of Criminal Appeals granted Appellant an out-of-time appeal on
February 24, 2010.[9]  This appeal followed.   

Discussion

            Appellant's
issues one and two assert the trial court erred by admitting evidence, at the
guilt-innocence stage, concerning the syringe found in his sock and the circumstances
surrounding his arrest pursuant to a warrant on July 12, 2004, because that
evidence was irrelevant, showed character conformity, and was more prejudicial
than probative.  See Tex. R. Evid. 401, 404(b), 403.[10]  By his third issue, Appellant asserts the
evidence that he was in possession of the methamphetamine was legally and
factually insufficient to support his conviction.      

I.          Issues
One and Two -- Extraneous Offenses

            Although
the general rule is that the defendant is to be tried only for the offense
charged and not for any crimes or for being a criminal generally; Segundo v. State, 270 S.W.3d 79, 87
(Tex.Crim.App. 2008) (citing Crank v.
State, 761 S.W.2d 328, 341 (Tex.Crim.App. 1988)), evidence of extraneous
acts of misconduct are admissible if (1) the uncharged act is relevant[11] to a material issue in the
case, and (2) the probative value of that evidence is not significantly
outweighed by its prejudicial effect.  Id. 
So long as the controverted evidence tends to establish some evidentiary fact related to motive,
opportunity, intent, preparation, plan, knowledge, identity, absence of mistake
or accident, or rebut some defensive theory, the extraneous offense evidence is
admissible.  See Tex. R. Evid. 404(b).  See also
Moses v. State, 105 S.W.3d 622, 626 (Tex.Crim.App. 2003); Williams v. State, 290 S.W.3d 407, 410
(Tex.App.--Amarillo 2009, no pet.) (citing Santellan
v. State, 939 S.W.2d 155, 168-69 (Tex.Crim.App. 1997)).  

            In
determining whether the probative value of evidence was substantially
outweighed by the danger of unfair prejudice, we consider (1) how well the
evidence makes a "seriously contested" issue more or less probable;
(2) the potential of the evidence to confuse or prejudice the jury; (3) the
time needed to present the evidence; and (4) the opponent's need for the
evidence.  See Wyatt v. State, 23 S.W.3d 18, 26 (Tex.Crim.App. 2000).  

            A.        Standard of Review

            While acknowledging that the trial
court is given wide latitude to admit or exclude evidence of extraneous
offenses; Sanders v. State, 255
S.W.3d 754, 760 (Tex.App.--Fort Worth 2008, pet. ref'd) (citing Montgomery v. State, 810 S.W.2d 372, 390
(Tex.Crim.App. 1991) (op. on rehg)), we review a
trial court's ruling on the admissibility of extraneous offense evidence under
an abuse of discretion standard.  Prible v. State, 175 S.W.3d 724, 731
(Tex.Crim.App. 2005).  We will uphold the
trial court's ruling if it is within the "zone of reasonable disagreement;"
id. (quoting Santellan, 939 S.W.2d at 169), i.e., "if the evidence shows
that (1) an extraneous transaction is relevant to a material, non-propensity
issue, and (2) the probative value of that evidence is not substantially
outweighed by the danger of unfair prejudice, confusion of the issues, or
misleading the jury."  De La Paz v. State, 279 S.W.3d 336, 344
(Tex.Crim.App. 2009) (citing Santellan,
939 S.W.2d at 169).  "If the ruling [is]
correct on any theory of law applicable to the case, in light of what was
before the trial court at the time the ruling was made, then we must uphold the
judgment."  Martin v. State, 173 S.W.3d 463, 467 (Tex.Crim.App. 2005) (quoting Sauceda v. State, 129 S.W.3d 116, 120
(Tex.Crim.App. 2004)).     

            




 

B.        Issue
One

            From the
record, it is apparent that the trial court deliberated on Appellant's
evidentiary objections during a pretrial hearing.  From its actions, it appears the trial court
accepted the State's explanation that connecting the syringe found on Appellant
in jail to the syringe in the console of Thomas's vehicle and the clear liquid
in the syringe with the clear liquid found in the van parked outside his
father's residence was probative evidence because it linked Appellant to the
methamphetamine found in Thomas's vehicle on the passenger side where Appellant
was sitting and the liquid methamphetamine located in the van at his father's
residence.  Therefore, the State
satisfied the trial court that the extraneous evidence had relevance apart from
its character conformity value.  See Santellan, 939 S.W.2d at 169 (citing
Montgomery, 810 S.W.2d at 387).  This evidence was relevant to establish
knowledge of the methamphetamine in both instances and rebut the defensive
theory that Appellant had no knowledge of the methamphetamine in either the van
or Thomas's vehicle.  Therefore, we
conclude the trial court's decision was within the zone of reasonable
disagreement.  

            In balancing probative value and
unfair prejudice under Rule 403, an appellate court presumes that the probative
value will outweigh any prejudicial effect. 
See Sanders v. State, 255
S.W.3d 754, 760 (Tex.App.--Fort Worth 2008, pet. ref'd) (citing  Montgomery,
810 S.W.2d at 389).  The "balance is
always tilted toward admission, not exclusion, of otherwise relevant
evidence."  De La Paz, 279 S.W.3d at 343. 
It is therefore the objecting party's burden to demonstrate that the
probative value is substantially outweighed
by the danger of unfair prejudice.  Id. (citing Hinojosa v. State, 995 S.W.2d 955, 958 (Tex.App.--Houston [14th
Dist.] 1999, no pet.)).

            Much of Appellant's argument
regarding unfair prejudice simply asserts that the evidence regarding the syringe
is inherently prejudicial.  Thus, Appellant has failed to establish that
the probative value of the evidence was significantly
or substantially outweighed by its prejudicial
effect.  See Segundo, 270 S.W.3d at 87-88; Sanders, 255 S.W.3d at 760.  See also Wyatt, 23 S.W.3d at 26
("[a]ny evidence presented by the State is generally prejudicial to the
defendant").  Appellant's knowledge
of the methamphetamine in the van and residence were seriously contested.  Although Thomas's testimony linked Appellant
to the methamphetamine in the van and his vehicle, Appellant denied knowledge
of either.  A small amount of powdered
methamphetamine was found on Thomas's person at the time of arrest, but, at the
jail, Appellant was in possession of a syringe containing a clear liquid
similar in appearance to that in the van where Thomas testified Appellant was
cooking methamphetamine.  One theory
advanced by Appellant through cross-examining witnesses and his direct
testimony was that Thomas was not credible. 
Therefore, as between testimony offered by Thomas and the testimony
offered by Appellant, evidence pertaining to the syringe was relevant to the
issue of credibility.  

            Moreover, the time necessary to
present this extraneous offense evidence represented a negligible portion of
the State's case at trial.  Limiting
instructions were given by the trial court and subsequently emphasized by
defense counsel during closing arguments. 
Further, there is no evidence of record that the jury disregarded the
trial court's limiting instructions.  See Vega v. State, 255 S.W.3d 87, 105
(Tex.App.--Corpus Christi 2007, pet. ref'd) ("any error was harmless
because the [limiting] instruction, which we presume the jury followed,
identified material issues for which the evidence could be considered under
Rule 404(b)" and appellant offered no evidence rebutting the presumption
that the jury followed the trial court's instructions).   Accordingly, issue one is overruled.

            C.        Issue Two

            At the
pretrial hearing, the trial court indicated that evidence of the circumstances
surrounding Appellant's arrest in July of 2004 was relevant to show intent,
knowledge, absence of mistake or accident.  We agree. 

            Evidence that Appellant possessed
methamphetamine at his father's residence on a later occasion is circumstantial
evidence that Appellant intentionally or knowingly possessed methamphetamine on
an earlier occasion.  See Wingfield v. State, 197 S.W.3d 922,
925 (Tex.App.--Dallas 2006, no pet.) (evidence that appellant had used
marijuana on other occasions "was circumstantial evidence that appellant
intentionally or knowingly possessed marijuana on [date alleged]"); Mason v. State, 99 S.W.3d 652, 656
(Tex.App.--Eastland 2003, pet. ref'd) (evidence appellant possessed cocaine two
years after charged offense "admissible as circumstantial evidence of
appellant's knowing possession of cocaine in this case").  See
Rogers v. State, 853 S.W.2d 29, 32 (Tex.Crim.App. 1993) (evidence that
appellant possessed marijuana "could arguably make it more probable that
the appellant would also be inclined to be in possession of another type of
illegal substance (methamphetamine)"). 


            Again, much of what Appellant
asserts is that the evidence of the July 2004 incident is inherently prejudicial while failing to establish that the probative
value of the evidence was significantly
or substantially outweighed by its prejudicial
effect.  See Segundo, 270 S.W.3d at 87-88; Sanders, 255 S.W.3d at 760.  Again,
Appellant's knowledge of the methamphetamine in the van and residence were
seriously contested and although Thomas's testimony linked Appellant to the
methamphetamine in the van and the vehicle, Appellant denied knowledge of
either.  

            Moreover, again, the time necessary
to present this extraneous offense evidence represented a negligible portion of
the State's case at trial and the limiting instruction given by the trial court
was subsequently emphasized by defense counsel in his closing argument.  Further, there is no evidence in the record
that the jury disregarded the trial court's limiting instructions and it is
difficult to find either prejudice or jury confusion when Appellant testified
on direct examination regarding the July 2004 incident and Appellant's counsel
argued the incident in his closing argument. 
See Vega, 255
S.W.3d at 105.  Accordingly, issue
two is overruled.

II.         Issue
Three -- Sufficiency of the Evidence

            Appellant
asserts the State's evidence in support of its contention that he had exercised
actual care, custody, control, or management over the methamphetamine
discovered in Thomas's vehicle, the van, and his father's residence was legally
and factually insufficient.  

            A.        Standard of Review

            While this
appeal was pending, the Court of Criminal Appeals held that appellate courts
were to review the sufficiency of evidence in a criminal case using only the
legal sufficiency standard.  See Brooks v. State, 323 S.W.3d 893, 912
(Tex.Crim.App. 2010)[12]  In Brooks,
the Court held that the only standard that a reviewing court should apply in
determining whether the evidence in a criminal proceeding is sufficient to
support each element of the criminal offense beyond a reasonable doubt is the
standard set forth in Jackson v. Virginia.[13]  Thus, since the Court has abolished factual
sufficiency review, we need not address Appellant's challenge to the factual
sufficiency of the evidence.

            In assessing the sufficiency of the
evidence to support a criminal conviction under the standard enunciated in Jackson v. Virginia, this Court
considers all the evidence in a light most favorable to the verdict and
determines whether, based on that evidence and reasonable inferences to be
drawn therefrom, a rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  Jackson,
443 U.S. at 319; Brooks, 323 S.W.3d at 912. 
When conducting such a review, this Court is required to defer to the
jury's role as the sole judge of witness credibility, and the weight their
testimony is to be afforded.  Id. at 899.  See
Dewberry v. State, 4 S.W.3d 735, 740 (Tex.Crim.App. 1999).

            To find legal sufficiency,
"[e]ach fact need not point directly and independently to the guilt of the
defendant, as long as the cumulative force of the incriminating circumstances
is sufficient to support the conviction." 
Hooper v. State, 214 S.W.3d 9,
13 (Tex.Crim.App. 2007).  However, if,
given all the evidence, a rational jury would necessarily entertain a
reasonable doubt of the defendant's guilt, due process requires that we reverse
and order a judgment of acquittal.  Swearingen v. State, 101 S.W.3d 89, 95
(Tex.Crim.App. 2003) (citing Narvaiz v.
State, 840 S.W.2d 415, 423 (Tex.Crim.App. 1992), cert. denied, 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791
(1993)).  

            B.  Applicable Law

            To support
the verdict rendered in this case, the State was required to prove that
Appellant knowingly possessed a controlled substance, to-wit:  methamphetamine, in an amount of four grams
or more but less than 200 grams with intent to deliver.  To prove possession,
the State was required to show that Appellant (1) exercised "actual care,
custody, control, or management" of the substance and (2) knew the matter
possessed was contraband.  See §§ 481.002(38) & 481.112(d). (West 2010); Poindexter v.
State, 153 S.W.3d 402, 405-06 (Tex.Crim.App. 2005).  

            Where, as here, the accused does not
have actual possession of the controlled substance or exclusive possession of
the locale where the controlled substance was found, it cannot be concluded or
presumed that the accused had possession over the contraband unless there are
independent facts or circumstances that tend to connect or link the accused to
the knowing possession of the contraband. 
Evans v. State, 202 S.W.3d
158, 161-62 (Tex.Crim.App. 2006).

            There are numerous nonexclusive
factors that, under the unique circumstances of each case, have been recognized
as contributing to an evaluation of whether an accused is linked to the contraband.  See
Triplett v. State, 292 S.W.3d 205, 208 (Tex.App.--Amarillo 2009, pet.
ref'd).  Those links include, but are not
limited to:  (1) the defendant's presence
when a search is conducted; (2) whether the contraband is in plain view; (3)
the defendant's proximity to and accessibility of the contraband; (4) whether
the defendant was under the influence of contraband when arrested; (5) whether
the defendant possessed other contraband or narcotics when arrested; (6)
whether the defendant made any incriminating statements when arrested; (7)
whether the defendant attempted to flee; (8) whether the defendant made any
furtive gestures; (9) whether there was an odor of contraband; (10) whether
other contraband or drug paraphernalia were present; (11) whether the defendant
owned or had the right to possess the place where the drugs were found; (12)
whether the place where the drugs were found was enclosed; (13) whether the
defendant was found with a large amount of cash; (14) whether the conduct of
the defendant indicated a consciousness of guilt.  Evans,
202 S.W.2d at 162 n.12.  See
Triplett, 292 S.W.3d at 208; Figueroa
v. State, 250 S.W.3d 490, 500 (Tex.App.--Austin 2008, pet. ref'd) (citing Brown v. State, 911 S.W.2d 744, 745
(Tex.Crim.App. 1995), cert. denied,
No. 08-7719, 2009 U.S. LEXIS 1276 (U.S. Tex. Feb. 23, 2009)).

            These factors, however, are simply
that--factors which may circumstantially establish the sufficiency of evidence
offered to prove a knowing "possession."  Evans,
202 S.W.3d at 162 n.12 ("They are not a litmus
test.")  Furthermore, there
is no set formula that an appellate court can use to determine if there are
sufficient links to support an inference of knowing possession of drugs.  Taylor
v. State, 106 S.W.3d 827, 831 (Tex.App.--Dallas 2003, no pet.).  Each case must be examined according to its
own facts on a case-by-case basis; Roberson
v. State, 80 S.W.3d 730, 736 (Tex.App.--Houston [1st Dist.] 2002, pet.
ref'd), and the number of links is not as important as the combined logical
force of all the evidence tending to link the accused to the contraband.  Evans,
202 S.W.3d at 162, 166.

            C.        Analysis

            Viewing the
evidence in a light most favorable to the verdict, the evidence at trial
indicated that, on January 22, 2004, Appellant was seen at his father's
residence with methamphetamine. 
Materials used to make methamphetamine were seen inside the van and
Appellant was observed preparing to make methamphetamine with those materials.  On January 23, 2004, Appellant was observed
coming out of the van after "gassing" methamphetamine.  Sergeant Ybarra discovered a small amount of methamphetamine
in Appellants father's residence in a desk drawer and two glass containers of
clear, liquid methamphetamine in a small refrigerator in the van parked in Appellants
father's yard.  

            When Appellant was searched at the
Lubbock County Jail shortly after his arrest, he had a syringe in his sock
filled with a clear liquid.       The syringe discovered on Appellant at the
jail matched a syringe found in the console of the vehicle he had been riding
in as a passenger.  Beside the passenger
seat, a black leather pouch containing small plastic bags filled with methamphetamine
and a set of digital scales was found. 
Underneath the passenger seat, a bag containing a substantial amount of
methamphetamine was found.  In the vehicle's
ashtray, was a burnt marijuana cigarette which Appellant admitted smoking.  In addition,
Appellant was observed making furtive movements inside Thomas's vehicle.  Thomas denied knowing about any
methamphetamine in his vehicle and testified the methamphetamine in his vehicle,
the van, and Appellant's father's residence did not belong to him.  Further, while sitting in the DPS cruiser,
Appellant told Thomas that, if he would take the rap, he would bail him out of
jail.  

            When an arrest warrant was later served
on Appellant, he was found in possession of methamphetamine and multiple items
of drug paraphernalia, i.e., syringes, a glass pipe, propane torches, and two
plastic bags of a leafy substance.  Appellant
admitted that when he was at his father's house he was using and had possessed methamphetamine
that belonged to a friend.  

            In support of this appeal, Appellant
primarily argues conflicts in the testimony of Thomas, Appellant, and
Appellant's father while drawing all inferences from the evidence in favor of
Appellant and against the verdict.  As an
appellate court, we do not resolve any conflicts of fact, weigh any evidence,
or evaluate the credibility of any witnesses. 
Dewberry v. State, 4 S.W.3d
735, 740 (Tex.Crim.App. 1999) ("When reviewing the evidence, our role is
not to become a thirteenth juror.") 
Rather, we give deference to the fact finder to fairly resolve conflicts
in testimony, to weigh evidence, and to draw reasonable inferences from basic
facts to ultimate facts;  Hooper v. State, 214 S.W.3d 9, 13
(Tex.Crim.App. 2007), while resolving any inconsistencies in favor of the
verdict.  Matson v. State, 819 S.W.2d 839, 843 (Tex.Crim.App. 1991).  

            Given the combined logical force of
the evidence most favorable to the verdict, we find the evidence sufficiently
links Appellant to the methamphetamine to the requisite level of confidence
that a rational trier of fact could have found the essential elements of the
crime beyond a reasonable doubt.  Appellant's
third issue is overruled.


Conclusion

            The trial
courts judgment is affirmed.

 

                                                                                                Patrick
A. Pirtle

                                                                                                      Justice  

 

Do not publish.











[1]See Tex.
Health & Safety Code Ann. §§ 481.112(a) & (d) (West 2010).  This offense is a first degree felony
punishable by confinement in the Institutional Division of the Texas Department
of Criminal Justice for life or for any term of not more than 99 years or less
than 5 years and a fine not to exceed $10,000. 
Tex. Penal Code Ann. § 12.32 (West 2003).    





[2]Deputy
Cory Lucas of the Lubbock County Sheriff's Office testified that, when
Appellant was searched before entering the jail, he found a syringe filled with
a clear liquid located in Appellant's sock.





[3]Scott
Williams, DPS forensic chemist, testified at trial that, of the substances
found on Thomas and in his vehicle, .26 grams of methamphetamine were taken
from Thomas and 21.87 grams of methamphetamine were found on the passenger side
of the vehicle.  Of the substances found
at the residence of Appellant's father and in the van, Williams identified 4.12
grams of liquid methamphetamine from the van and a little over three grams of
powdered methamphetamine from the residence. 





[4]See Tex. Health & Safety Code Ann. §
481.115(d) (West 2010).  This offense is
a second degree felony punishable by confinement in the Institutional Division
of the Texas Department of Criminal Justice for any term of not more than 20
years or less than 2 years and a fine not to exceed $10,000.  Tex. Penal Code Ann. §
12.34 (West 2003).  





[5]The
immunity agreement granted Thomas immunity regarding anything he testified to
at trial.  Prior to testifying, Thomas
was convicted in Lubbock County of possession of a controlled substance with
intent to deliver based upon the events of January 23, 2004.  





[6]"Gassing"
is a process whereby a gas, typically anhydrous ammonia, is introduced into a
liquid containing methamphetamine in order to cause the methamphetamine to
separate from the liquid itself.





[7]Thomas
testified that he was staying with his girlfriend and had never stayed in the
van.





[8]The
trial court's charge stated, in pertinent part, as follows:

(E) The State has introduced
evidence of extraneous crimes or bad acts other than the one charged in the
indictment in this case.  This evidence
was admitted for the purpose of aiding you, if it does, in passing upon the
question of the defendant's motive, intent, knowledge, possession, opportunity,
absence of mistake or accident, and for the purpose of rebutting a defensive
theory.  You cannot consider this
evidence of extraneous crimes or bad acts for any purpose unless you find and
believe beyond a reasonable doubt that the defendant committed such extraneous
crimes or bad acts.





[9]Ex parte Phillips, No. AP-76,209, 2010
Tex. Crim. App. Unpub. LEXIS 131 (Tex.Crim.App. Feb.
24, 2010) (original proceeding).





[10]Provisions
of the Texas Rules of Evidence will be cited simply as "Rule ____"
throughout the remainder of this opinion.





[11]Evidence
is relevant if it has "any tendency to make the existence of any fact that
is of consequence to the determination of the action more probable or less
probable than it would be without the evidence."  Tex. R. Evid.
401.     





[12]Judge
Hervey delivered the opinion in Brooks,
joined by Judges Keller, Keasler, and Cochran; and,
Judge Cochran delivered a concurring opinion, joined by Judge Womack.  Although we are not bound by a decision of
four judges, Pearson v. State, 994
S.W.2d 176, 177 n.3 (Tex.Crim.App. 1999), we read the combined opinions of
Judges Hervey and Cochran in Brooks
as abandoning factual sufficiency as an evidentiary sufficiency standard of
review distinct from legal sufficiency.





[13]Jackson v. Virginia, 443
U.S. 307, 335 S.Ct. 2781, 61 L.Ed.2d 560 (1979).